IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD GREEN (# N-83325) | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13 C 50215 |
| v. | ) | |
| | ) | Judge James F. Holderman |
| SHERIFF PAUL KAUPAS, DR. H. | ) | |
| HARMSTON, DR. ELAZEGUI ROZEL, | ) | |
| and NURSE BARBARA MILLER, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The motion to dismiss filed by Dr. Elazegui Rozel and Nurse Barbara Miller [27], which defendant Dr. H. Harmston joined, and the motion to dismiss filed by Sheriff Paul Kaupas [16] are denied. The Court revisits its prior denials of Green's requests for counsel. Attorney Catherine Steege (of Jenner & Block LLP, 330 N. Wabash Avenue, Chicago, Illinois, 60611, csteege@jenner.com) is recruited to represent Green in accordance with counsel's trial bar obligations under the District Court's Local Rule 83.37. After investigation, counsel may file an amended complaint within sixty days if this comports with counsel's obligations under Rule 11 of the Federal Rules of Civil Procedure. If counsel is unable to proceed with the complaint on file or file an amended complaint, she should so inform the Court. A status hearing is scheduled for October 14, 2014, at 9:00 a.m.

## STATEMENT

Plaintiff Edward Green, who is currently incarcerated at the Dixon Correctional Center, filed this pro se civil rights action against Dr. H. Harmston, Dr. Elazegui Rozel, and Nurse Barbara Miller (medical staff at the Will County Jail) and Paul Kaupas (the Will County Sheriff) based on treatment Green received for a lung condition while he was housed at the Will County Jail. (Compl. pp. 6-8.) Before the Court are motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Dr. Rozel (referred to in the motion as "Dr. Elazegui") and Nurse Miller, which Dr. Harmston joined, and a motion to dismiss filed by Sheriff Kaupas. For the following reasons, both motions are denied. In addition, the Court revisits its prior denials of Green's requests for counsel and recruits counsel to represent Green.

## BACKGROUND

The Court draws the following facts from Green's complaint (Dkt. 1) and accepts them as true for purposes of the motion to dismiss. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939,

946 (7th Cir. 2013). In addition, the Court will construe Green's allegations liberally because he is proceeding pro se. *See Ambrose v. Roeckeman*, 749 F.3d 615, 618 (7th Cir. 2014).

Green is an Illinois state prisoner who is currently incarcerated at the Dixon Correctional Center but was confined at the Will County Jail at all times relevant to this action. (Compl. p. 6.) Dr. Harmston, Dr. Rozel, and Nurse Miller treated Green while he was at the Will County Jail. (*Id*. pp. 7-7a.). Will County Sheriff Paul Kaupas is in charge of the Will County Jail. (Id. p. 7.)

On November 1, 2011, Green was arrested and transported to the Will County Jail. (*Id*. p. 6.) He advised the intake staff about his medications, including Letairis, a prescription drug used to treat pulmonary arterial hypertension. (*Id*.) This is a chronic, life-threatening lung condition that causes the pulmonary arteries in the lungs to narrow and places Green at high risk for pulmonary embolisms. (*Id*.) Green told the intake staff that he had been taking Letairis for approximately four months prior to his incarceration to treat his lung condition, that "[i]t real[ly] helped [him] in avoiding pulmonary embolisms," and that without the Letairis, he believed that his condition would worsen. (*Id*.)

Two months passed, and Green did not receive Letairis despite his repeated requests to Dr. Harmston and Dr. Rozel for this medication. (*Id*.) When he asked Nurse Miller about Letairis and discussed his health concerns with her, she told him that the jail was not permitted to dispense Letairis. (*Id*.) On December 20, 2011, Green wrote to Sheriff Kaupas to advise him about his condition and the lack of a prescription for Letairis but Kaupas did not respond to Green's request for help. (*Id*. p. 7.)

In January 2012, Green had a "medical episode" that caused him to have "blood pouring from [his] lungs." (*Id*. p. 6.) Correctional officers quickly summoned aid, and Green was taken to the hospital by ambulance and placed in the Intensive Care Unit, where he was successfully treated. (*Id*. pp. 6-7.) Dr. Labaidy, Green's personal pulmonologist, visited Green multiple times during Green's hospitalization. (*Id*.) Dr. Labaidy believed that Green needed to continue therapy with Letairis, and when Green was transported back to the Will County Jail, Dr. Labaidy advised "jail personnel" accordingly. (*Id*. p. 7.) Dr. Labaidy gave Green a 30-day supply of Latairis in June of 2011, and jail staff dispensed it to Green despite the prior representations that this medication could not be dispensed in the Will County Jail. (*Id*. p. 7a.)

Green was subsequently transferred to the Dixon Correctional Center. (*Id*. p. 3.) He filed a grievance about the medical care he received at the Will County Jail but did not receive a ruling due to his transfer to state custody. (*Id*.)

In June 2013, Green filed this civil rights action pursuant to 42 U.S.C. § 1983 in the United States District Court for the Northern District of Illinois, Western Division, where the Dixon Correctional Center is located. (Dkt. 1.) The Court found that the Eastern Division was a more convenient venue because the events underlying the complaint all took place while Green was confined at the Will County Jail, which is located in the Eastern Division. (Dkt. 6.) After

the case was transferred to the Eastern Division, this Court denied Green's request to recruit counsel to represent him based on its finding that Green had articulated cognizable claims and appeared to be capable of litigating this matter on his own. (Dkt. 9.) The Court, however, noted that it would consider revisiting this issue later if appropriate. (*Id*.)

Next, Sheriff Kaupas filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 16.) In response, Green wrote the Court to request the recruitment of counsel, and the Court again declined to recruit counsel. (Dkt. 24.) Dr. Rozel and Nurse Miller then filed their own Rule 12(b)(6) motion to dismiss (Dkt. 27), which Dr. Harmston joined (Dkt. 42, 44). In the meantime, Green renewed his motion for recruitment of counsel for a third time, asserting that his shortness of breath and fatigue hampered his ability to go to the prison library and stating that he was on supplemental oxygen at all times. (Dkt. 32.) The Court again declined to recruit counsel. (Dkt. 33.)

In March 2014, Green sought an extension of time to respond to the pending motions to dismiss. (Dkt. 48.) In support, he alleged that his illness continued to hamper his ability to go to the prison library. The Court extended the date for Green to respond but stated that if he failed to file a timely response, it would rule on the motions without the benefit of his views. (Dkt. 50.) Green did not file a response as ordered by the Court. On July 9, 2014, the Court ordered Green to show cause why his case should not be dismissed for want of prosecution. (Dkt. 53.) A letter from Green dated July 3, 2014, crossed in the mail with the Court's July 9th order, and was filed on July 16, 2014. (Dkt. 54.) Green repeated his request for counsel, stated that he did not believe he could "argue [his] case" due to his health, enclosed multiple letters from attorneys declining to represent him on a pro bono basis, and asked the Court to advise him of the status of his case. (Dkt. 54.) The two motions to dismiss are presently pending before the Court.

## **LEGAL STANDARD**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Id*. This means that a complaint must contain sufficient factual content "to allow the court 'to draw a reasonable inference that the defendant is liable for the misconduct alleged.'" *Charleston v. Board of Trs. of Univ. of Ill. at Chic.*, 741 F.3d 769, 772 (7th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In ruling on a Rule 12(b)(6) motion, the Court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011).

**DISCUSSION**

As detailed above, Green has not responded to the motion to dismiss and has repeatedly asked the Court to recruit counsel to represent him. Based on Green's July 3, 2014, letter, the Court discharges the rule to show cause issued on July 9, 2014, as Green clearly wishes to prosecute this case and has taken steps to do so. The Court will proceed based on the materials presently before it.

**I.      The Deliberate Indifference Standard**

The Court cannot ascertain why Green was transferred from the Will County Jail to the Dixon Correctional Center and whether he was a pretrial detainee while he was at the Will County Jail (in which case the Fourteenth Amendment's due process clause applies to his medical care) or had been convicted (in which case the Eight Amendment applies). *See Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013). The standards used for pretrial detainees and convicted prisoners are the same, *see id.*, so the Court will evaluate Green's complaint through the lens of the Eighth Amendment.

Correctional officials may not act with deliberate indifference to an inmate's serious medical needs. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Pittman ex rel. Hamilton v. Cnty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). Deliberate indifference has an objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A medical need is objectively serious when "the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). With respect to the subjective component of the deliberate indifference test, a plaintiff must allege that the defendant in question was aware of and consciously disregarded his medical need. *See Farmer*, 511 U.S. at 837; *Estelle*, 429 U.S. at 103-04. "This subjective standard requires more than negligence and it approaches intentional wrongdoing." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012).

Deliberate indifference claims against a medical professional and a lay person are evaluated differently. *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2103). A medical professional is "entitled to deference in treatment decisions unless no minimally competent professional would have so responded under the circumstances" at issue. *Id.* (internal quotations omitted). Moreover, an inmate's disagreement with a treater's exercise of judgment is generally insufficient to establish deliberate indifference. *Williams v. Health Prof'ls, Ltd.*, No. 10-CV-152-JPS, 2012 WL 666787, at *7 (E.D. Wis. Feb. 29, 2012). Thus, a medical professional acts with deliberate indifference only if his decision "is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible did not actually base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886,

894-95 (7th Cir. 2008). Deliberate indifference, however, is not synonymous with medical malpractice as the Eighth Amendment does not codify common law torts. *McGee*, 721 F.3d at 481. In addition, when evaluating the care provided to an inmate, the Court must consider the totality of the medical care provided, as isolated incidents of delay do not rise to the level of deliberate indifference. *Lloyd v. Fishmen*, No. 09 C 0381, 2011 WL 2560228, at *4 (N.D. Ill. June 28, 2011).

In contrast, non-medical prison officials are generally "entitled to relegate to the prison's medical staff the provision of good medical care." *See Burks v. Raemisch*, 555 F.3d 592, 990 (7th Cir. 2009). Nevertheless, non-medical "prison officials may be found to be deliberately indifferent to a prisoner's serious medical needs if 'they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.'" *Flournoy v. Ghosh*, 881 F. Supp. 2d 980, 990 (N.D. Ill. 2012) (quoting *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008)); *see also McGee*, 721 F.3d at 483.

## II. Deliberate Indifference by Medical Professionals – Dr. Rozel, Dr. Harmston, and Nurse Miller

Dr. Rozel, Dr. Harmston, and Nurse Miller all treated Green and are all medical professionals. They do not dispute that Green's pulmonary condition is a sufficiently serious medical need under the Eighth Amendment's objective prong. Nevertheless, they argue that Green's allegations about their refusal to ensure that he received Letairis while in custody at the Will County Jail fail to satisfy the Eighth Amendment's subjective prong because Green does not have a constitutional entitlement to demand specific care.

The treating defendants' contention that the Eighth Amendment claims against them must be dismissed sweeps too broadly. An inmate can state an Eighth Amendment claim based on a disagreement about his medical treatment if that treatment demonstrates an absence of professional judgment, *Roe*, 631 F.3d at 857, or is so far afield from generally accepted professional standards that it shows that the treater did not provide care based on professional norms, *Sain*, 512 F.3d at 894-95. Here, when Green was admitted to the Will County Jail on November 1, 2011, he told the intake staff about his chronic lung condition and the associated risk of pulmonary embolisms. He also told the intake staff that he had been taking the prescription medication Letairis for approximately four months prior to his incarceration, that it helped him avoid pulmonary embolisms, and that his doctor believed that it would prevent his condition from worsening. Dr. Harmston and Dr. Rozel decided not to prescribe Letairis, despite Green's requests and the concerns he voiced about pulmonary embolisms. Nurse Miller also treated Green's lung condition and told him that the jail was not permitted to dispense Letairis.

Approximately two months after Green stopped treatment with Letairis, he had an unquestionably serious incident where he was admitted to the Intensive Care Unit due to sudden bleeding in his lungs. Dr. Labaidy, Green's personal doctor, saw Green multiple times during his

5

hospitalization, opined that Letairis was the drug that would best treat Green's condition, and told jail personnel that Green needed to take Letairis.

The Constitution does not require a prisoner to receive "unqualified access to health care." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Instead, he is entitled to receive adequate medical care. *Id.* At the motion to dismiss stage, the Court must accept Green's allegations that only continued therapy with Letairis would have prevented the emergency lung bleeding incident and that the lack of Letairis, combined with the care he was given at the Will County Jail, caused his condition to deteriorate permanently. The Court also notes that based on the allegations in his complaint, Green could have been dissatisfied with his treatment because he knew that it placed him at an unnecessarily high risk for a potentially fatal pulmonary embolism, as opposed to merely disagreeing with a treatment that did not include Letairis but nevertheless tracked generally accepted professional norms.

Accordingly, Green has stated a claim for deliberate indifference against Dr. Harmston and Dr. Rozel based on the treatment they provided to him. Similarly, Green's claims against Nurse Miller based on the adequacy of the care she provided and his allegation that she intentionally gave him incorrect information about the jail's ability to administer Letairis survive the motion to dismiss. *See Lloyd*, 2011 WL 2560228, at *4 (holding that the provision of medical care does not "automatically preclude a deliberate indifference claim if a finder of fact could infer that the care provided was so inadequate as to constitute intentional mistreatment").

Discovery will reveal, among other things, precisely what treatment Dr. Harmston, Dr. Rozel, and Nurse Miller provided to Green while he was at the Will County Jail and why they believed that treatment was appropriate. The Court can then evaluate whether their treatment was "so far out of bounds that it was blatantly inappropriate or not even based on medical judgment." *King v. Kramer*, 680 F.3d 1013, 1019 (7th Cir. 2012); *see also Williams*, 2012 WL 666787, at *7 (granting summary judgment to defendants based on a fully developed record regarding the treatment for the plaintiff's diabetes); *Sharif v. Ghosh*, No. 12 C 2309, 2014 WL 1322820, at *3 (N.D. Ill. Apr. 1, 2014) (rejecting defendants' argument that a prisoner's complaint was required to identify the relevant generally accepted professional treatment, practice, or standards used to treat his condition). However, Green may proceed with his claims against Dr. Rozel, Dr. Harmston, and Nurse Miller. Their motion to dismiss is denied.

### III. Deliberate Indifference by a Non-Medical Professional – Sheriff Kaupas

The claim against Sheriff Kaupas is based on his receipt of a letter from Green complaining about the decision to stop therapy with Letairis. According to Kaupas, nothing in the complaint suggests that Green's alleged need for Letairis should have been obvious to him. He also contends that he was entitled to rely on the judgment of the medical professionals treating Green at the Will County Jail so his failure to act in response to the letter cannot support a deliberate indifference claim.

As noted above, generally non-medical officials may defer to care provided by a facility's medical staff. *Burks*, 555 F.3d at 990. However, if they know or have reason to know that an inmate is being mistreated and fail to act, they can be liable for deliberate indifference. *See Flournoy*, 881 F. Supp. 2d at 990; *see also Liebich v. Hardy*, No. 11 C 5624, 2013 WL 4476132, at *7 (N.D. Ill. Aug. 19, 2013) (because a supervisory jail official may not turn a blind eye to alleged constitutional violations, an allegation that he knew about an alleged constitutional violation and failed to act is sufficient to state a claim for deliberate indifference).

Green's letter to Sheriff Kaupas complaining about the discontinuation of Letairis for treatment of his lung condition supports an inference that Sheriff Kaupas knew that Green claimed that medical personnel had mistreated him or failed to provide necessary follow-up care. *See Burks*, 555 F.3d at 594 ("Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise"). Discovery may elicit evidence demonstrating that Sheriff Kaupas' apparent deference to the treatment provided to Green by medical staff was appropriate. *See Harris v. Ghosh*, No. 10 C 7136, 2012 WL 3903894, at *8 (N.D. Ill. Sept. 7, 2012) (granting summary judgment to non-medical defendants because record did not show that these defendants' decision to defer to the judgment of medical professionals was, itself, deliberately indifferent). However, at this stage of the proceedings, Green has stated a viable Eighth Amendment deliberate indifference claim against Sheriff Kaupas. His motion to dismiss this claim is denied.

### IV. Recruitment of Counsel

The Court previously declined to recruit counsel for Green on multiple occasions but noted that it would revisit this decision as the case progressed if appropriate. There is no right to counsel in a civil action. *Henderson v. Ghosh*, — F.3d —, No. 13-2035, 2014 WL 2757473, at *4 (7th Cir. June 18, 2014). As the Seventh Circuit has recently observed:

> Whether to recruit an attorney is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases. District courts are thus placed in the unenviable position of identifying, among the sea of people lacking counsel, those who need counsel the most.

*Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). In evaluating whether to recruit counsel, the Court must consider "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Henderson*, 2014 WL 2757473, at *5 (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007).

The defendants do not dispute that Green has been diagnosed with a serious pulmonary condition. This case is proceeding to discovery and will likely involve complex medical issues. Moreover, Green has consistently alleged that he is experiencing on-going tiredness and shortness of breath that hamper his ability to visit the prison law library. In light of the nature of

the allegations and the complexity of the issues moving forward, and in an exercise of its discretion, the Court will revisit its prior denials of Green's requests for counsel. Attorney Catherine Steege of Jenner & Block LLP is recruited to represent Green in accordance with counsel's trial bar obligations under the District Court's Local Rule 83.37. After investigation, counsel may file an amended complaint within sixty days if this comports with counsel's obligations under Rule 11 of the Federal Rules of Civil Procedure. If counsel is unable to proceed with the complaint on file or file an amended complaint, she should so inform the Court.

ENTER:

_____
JAMES F. HOLDERMAN
United States District Judge

Date: July 28, 2014